Agatha GLATT, Plaintiff and Respondent,

v.

Clara FEIST, Defendant and Appellant.

Civ. No. 8350.

Supreme Court of North Dakota.

Feb. 29, 1968.

Vogel & Bair, Mandan, and Robert Chesrown, Linton, for plaintiff and respondent.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for defendant and appellant.

TEIGEN, Chief Justice (on reassignment).

The defendant has appealed from a judgment which awards to the plaintiff damages for personal injury sustained when she was struck by defendant's automobile in the city of Hague, where both parties reside.

The plaintiff was struck by the defendant's automobile while it was being driven by the defendant on what is hereafter referred to as Main Street of the small town of Hague. Main Street was also State Highway No. 11, which passes through Hague in an east-west direction. Main Street is from 80 to 84 feet in width and is hard-surfaced. At the time of the accident

the roadway had been covered with a layer of loose gravel or gravel chips, and the automobile traffic following along the center of the street had removed the gravel from the center of the street and the driving lane so created was about 21 feet in width. Thus the width of the gravel covering the outside portions of Main Street was about 30 feet on each side of the driving lane.

A north-south graveled street intersected Main Street and it was near this intersection, but to the east thereof, that the accident occurred. Main Street was a through street being protected at this intersection by stop signs.

The plaintiff lived north of Main Street and east of the graveled intersecting street. On the morning of March 9, 1965, the date of the accident, she had walked from her home to her church to attend services. The church was located about two and one-half blocks south of her home and on the west side of the intersecting graveled street. It was located a distance of about one and one-half blocks south of Main Street. She walked to and from church and in so doing, had to cross Main Street.

The plaintiff was returning to her home from church and walked along the east side of the graveled intersecting street at about 8:15 a. m. The sidewalks were icy. She testified that as she proceeded north toward her home, she came to the stop sign located at the southeast corner of the intersection. She testified she looked in both directions; that she saw no vehicles, and that she then started across Main Street in a northerly direction following the unmarked crosswalk. She testified she does not know if she looked again after she started across the intersection, but was definite in her testimony that she neither saw nor heard the defendant's automobile, which struck her as she was proceeding in a northerly direction across Main Street. As a result of the accident plaintiff was injured, for which injuries she seeks damages.

The defendant lived in a trailer house on the south side of Main Street about a quarter of a block west of the intersection described above. She operates a grocery store located on the north side of Main Street and east of the intersection some distance. It was a cold morning and she had started her automobile engine to warm it up. Her automobile was parked in front of her trailer home. The defendant testified she removed the frost from the windshield. The morning was clear; the sun was shining from the east. After her automobile was warmed up, she then drove east along Main Street. She testified that she had clear vision and that the sun did not obstruct her vision. As she came to the intersection she testified she saw the plaintiff standing at the curb east of the crosswalk near a steel quonset building. According to the evidence the steel quonset building was located on the south side of Main Street about 50 feet from the intersecting graveled street. Defendant testified she saw the plaintiff as she stepped off the curb and walked in a northerly direction crossing Main Street at a point some distance east of the crosswalk. She testified that she momentarily thought the plaintiff was going to stop but that plaintiff "kept right on going." Defendant was driving at about 8 to 10 miles per hour and as she was passing through the intersection which was slippery from ice formed on it, and toward where the plaintiff was crossing Main Street, she sounded her horn and thereafter applied her brakes and tried to turn to the right to avoid striking the plaintiff but that the left front of her automobile struck the plaintiff just a few feet before it came to a stop. She testified that when the plaintiff was struck she fell to the street at the left of her automobile and was not carried by the automobile; and that plaintiff lay on the street to the left of the automobile, where she remained until she was removed and placed into the back seat of defendant's automobile. Defendant testified her automobile moved ahead a couple of feet after the accident; and it again moved forward a short distance when she placed it in neutral.

Certain measurements were made by the deputy sheriff. He testified he found skid marks made by the defendant's automobile. They commenced in about the middle of the unmarked crosswalk at the east side of the intersection; and extended in an easterly direction, south of the centerline, a distance of 21 feet, where they ended. He also measured the distance from the point where the skid marks ended to the rear wheel of defendant's automobile where it stood after being stopped after the accident, which was 9 feet 7 inches. It appears from the testimony of the first two witnesses upon the scene, whose testimony is partially in conflict, that the plaintiff was found lying upon the street either just north of the centerline, as testified to by the first witness, or just south of the centerline, as testified to by the second; but both witnesses agree it was north of the defendant's automobile a few feet, and was either left of the rear part of the defendant's automobile or some distance farther toward the front thereof. However, it appears that the plaintiff was found by these witnesses lying on the street approximately 30 feet east of the unmarked crosswalk on the east side of the intersection. The only indication on the automobile of the impact was an area three inches in diameter below the left front headlight about one foot from the left side of the bumper.

The only material conflict in the evidence is in the testimony of the plaintiff and of the defendant. There were no eyewitnesses to the accident except the parties to the accident. The plaintiff testified that she was crossing Main Street upon the unmarked crosswalk at the intersection, whereas it is the defendant's testimony that the plaintiff was crossing Main Street at a point some distance, perhaps 30 feet, east of the crosswalk on the east side of the intersection.

The jury returned a verdict for the plaintiff and judgment was entered thereon. From the judgment the defendant has appealed to this court and in support of her appeal she has filed a number of specifications of error.

■ At the close of the plaintiff's case, and again at the close of the whole case, the defendant moved for a directed verdict. These motions were denied in accordance with Rule 50(a) N.D.R.Civ.P. No motion for a new trial was made nor was there a motion for' judgment notwithstanding the verdict. The case is here on appeal from the judgment and this court may review the ruling on the motion for directed verdict. Section 28–27–29.1, N.D.C.C.

The motion for directed verdict specified the particulars upon which each claim was based. The defendant urged that the evidence conclusively established: (1) the plaintiff was negligent and that her negligence was the proximate cause of her injury in that she looked for traffic only once before starting across the street and that her failure to observe the defendant's approaching car was without excuse or justification; (2) that the plaintiff's contributory negligence proximately causing her injury was established from her own admission that she stopped at a point an appreciable distance west of the crosswalk, then walked into the intersection not on the crosswalk, in violation of ordinance and law; and (3) that the plaintiff failed to yield the right of way to the defendant's automobile. That this failure, coupled with the utter lack of lookout, was negligence as a matter of law proximately contributing to her injuries.

■ Questions of negligence, contributory negligence and proximate cause of an injury are primarily questions of fact for the jury, unless the evidence is such that only one conclusion can reasonably be deduced therefrom. Peterson v. Rude, 146 N.W.2d 555 (N.D.); Jasper v. Freitag, 145 N.W.2d 879 (N.D.); Rokusek v. Bertsch, 78 N.D. 420, 50 N.W.2d 657; Leonard v. North Dakota Co-op Wool Marketing Asso., 72 N.D. 310, 6 N.W.2d 576.

It is only when the facts and circumstances are such that reasonable men can draw but one conclusion from the evidence that the question of negligence and contributory negligence becomes a question of law for the court.

"On an appeal from a judgment on the grounds that the court erred in failing to direct the verdict, the only question for review in the appellate court is the sufficiency of the evidence to sustain the verdict, regardless of conflicting testimony. In determining this issue the court must adopt that view of the evidence which is most favorable to the verdict."

Schnoor v. Meinecke, 77 N.D. 96, 40 N.W.2d 803.

We have examined the record in this case and, reviewing the evidence most favorable to the verdict, do not find it presents such a state of facts that reasonable men can draw but one conclusion therefrom, and therefore find it was proper to have denied the defendant's motion for a directed verdict.

The rest of the specifications of error assign as errors of law rulings of the trial court which defendant claims entitles her to a new trial. No motion for a new trial was made to the trial court but such is not necessary to obtain, on appeal from the judgment, a review of any question of law in the Supreme Court unless before the taking of the appeal the trial judge shall notify counsel of the party intending to take the appeal that he desires such motion to be made. Section 28–27–27, N.D.C.C. It appears no such notice was given and no motion for new trial was made. Specifications of error were served with the notice of appeal. The specifications which were argued fall into three general classifications: (1) the court erred in refusing to permit introduction of evidence relative to custom or habit of the plaintiff; (2) the court erred in its instructions to the jury; and (3) the court erred in failing to give certain requested instructions. We will consider these specifications of errors of law in the order set forth above.

The defendant's first specification is that the trial court erred in refusing to allow her to introduce evidence to show the plaintiff's habit as to the route she took in going to and from church. The plaintiff had testified on direct examination that on the day in question she walked straight north from the stop sign; then on cross-examination was asked whether it was true that in going home from church she was in the habit or customarily cut across Main Street to the northeast. Plaintiff objected to this line of inquiry, contending the only issue before the court was where plaintiff walked on the day of the accident, and that what she may have done on other occasions was immaterial. The court sustained the objection. The defendant, out of hearing of the jury, made an offer of proof to the effect that if the plaintiff were allowed to answer the question she would testify she often took a straight route to her home which may have indicated she crossed Main Street at an angle, and not on the crosswalk. Defendant further pointed out that in a pretrial deposition the plaintiff had so testified. The court denied the offer of proof. The defendant then proposed to read the plaintiff's testimony as given in the pretrial deposition. The plaintiff then moved, out of the hearing of the jury, for an order directing the defendant not to read the portion of the plaintiff's pretrial deposition to which she had referred. The trial court granted the plaintiff's motion. In this specification of error the defendant also points up that error occurred during the defendant's case in chief when the defendant called two witnesses to testify as to the habit of the plaintiff in following a certain route in returning from church. The proceedings following also occurred out of the hearing of the jury in which the defendant made an offer of proof. Defendant stated that if these two witnesses were permitted to answer

the questions put to them on this point they would each testify that they had observed the plaintiff walking home from church on many occasions and that when the plaintiff reached the intersection in question she would cut across or jaywalk across Main Street in a northeasterly direction. Plaintiff objected on the ground that it was immaterial to any issue in the case and this objection was sustained.

There were no impartial eyewitnesses to the accident. The only witnesses were the parties themselves. Their testimony is in direct conflict. Plaintiff testified she walked directly north on the crosswalk, whereas the defendant testified plaintiff was crossing Main Street at a point east of the crosswalk.

 If the plaintiff crossed at the crosswalk she had the right of way over the defendant's vehicle. Section 39–10–28 (1), N.D.C.C. If she jaywalked the defendant's vehicle had the right of way. Section 39–10–29(1), N.D.C.C. The course taken by the plaintiff in crossing Main Street on the particular day became an issue as a question of fact for determination by the jury. It is true that whatever course the plaintiff may have followed on other days is not material to the decision of this case. The evidence was not offered on the issue of proximate cause but was offered in support of proof of negligence. The defendant had pleaded the affirmative defense of contributory negligence and on this defense has the burden of proof to establish it by a fair preponderance of the evidence. The question of foundation is not before us on this appeal and we do not consider that question. The only witnesses to the issue of whether the plaintiff was crossing on the crosswalk or whether she was jaywalking are the parties themselves; both of whom are interested in the outcome of the case.

Habit means a course of behaviour of a person regularly repeated in like circumstances. It describes one's regular response to a repeated specific situation. It is the person's regular practice of meeting a particular kind of situation with a specific type of conduct. 1 Jones, Evidence (5th Ed.) Sec. 191; McCormick, Evidence, Hornbook Series, p. 340.

The law governing this class of evidence is far from harmonious. The weight of authority seems to uphold its use where there is an absence of eyewitnesses as to the fact in controversy. This is a matter of first impression in this state since statehood. However, in the territorial case of Elliot v. Chicago, M. & St. P. Ry. Co., 5 Dak. 523, 41 N.W. 758, 3 L.R.A. 363, wherein the territorial court held that where there were eyewitnesses of the occurrence causing the deceased person's death, the fact of his being a usually careful man is immaterial on the issue of the deceased person's contributing to the negligent act causing his death. The court said that however careful the deceased may have been generally would be of no avail to him if his negligence in fact contributed to the injuries, and however careless he may have been usually would not have been any defense to this action had he been free from negligence at the time the accident occurred.

In two exhaustive annotations contained in 15 A.L.R. pp. 125–145 and 18 A.L.R. pp. 1109 and 1110, the writers have concluded: (1) with very few exceptions the cases hold that evidence of a careful habit of one injured by another's negligence is not admissible to show care on his part at the time of injury; (2) that circumstances which would admit evidence of habit of an injured person had been regarded as more numerous when the evidence was offered to prove his negligence than when offered to prove his care. But the general rule, supported by the weight of authority, is that such evidence is not admissible; (3) that if evidence of habit is irrelevant to the issue it is ordinarily not admissible even though it may throw some light on

the question at issue; (4) if there are eyewitnesses to the occurrence in which a person is killed, evidence of the deceased's habits ordinarily is not admissible to show either care or negligence on his part; and (5) the weight of authority is that if a person is killed in an accident to which there are no eyewitnesses, evidence of his habits is ordinarily admissible as tending to throw light upon his probable conduct at the time of an injury.

It appears that most courts have held that evidence of habit in negligence cases is inadmissible. See McCormick, Evidence, pp. 325, 342; 1 Wigmore, Evidence, (3d Ed.) Secs. 65, 97; 1 Jones, Evidence, (5th Ed.) Secs. 191, 192; 9C Blash. Auto. Secs. 6190–6193; 32 C.J.S. Evidence § 582; and 29 Am.Jur.2d 303, 316, 317, 318 at 319.

Generally, the text writers disagree with the courts on the question of whether evidence of habit should be admissible. They point out that, while evidence of reputation for care or lack of care, or evidence of a proneness for an experience free from accident is not admissible on the issue of negligence, the habit of a person charged with negligence may be relevant and should be admitted. 1 Jones, Evidence, (5th Ed.) Sec. 191, p. 332; McCormick, Evidence, Habit and Custom, Sec. 162, p. 340. In 1 Wigmore, Evidence, (3d Ed.) Sec. 97, p. 530, the author says:

"Negligence is, in one aspect, the notdoing of a particular act; but in another and more correct aspect, it is the doing of one act in a manner which amounts to negligence in that some other act is omitted which ought to have accompanied it. There is no reason why such a habit should not be used as evidential,— either a habit of negligent action or a habit of careful action:"

The main argument which seems to prevail with the authorities excluding habit evidence is the fact that it introduces into the trial collateral issues of fact of which the opposing party has had no notice. Although the decisions of the courts in various jurisdictions have been far from uniform, most courts have held that evidence of habit for care or lack of care is inadmissible to prove care and freedom from carelessness. Thus it is generally held that one cannot establish a standard of care for the measurement of his own conduct on the occasion in question by showing that he has used care under similar circumstances on former occasions. However, evidence of habit of the person injured when such evidence is offered to prove his negligence, has been admitted more often than where such evidence of habit is offered to show his exercise of care. Most courts however, allow evidence of habit in cases where there are no eyewitnesses to the accident.

In this case, defendant has pleaded contributory negligence as a defense. The plaintiff had testified she was crossing at the crosswalk and the purpose of asking leave to read from her pretrial deposition was to impeach her testimony in this respect. The appellant also offered to prove by two witnesses, that the plaintiff, in returning home from church, habitually crossed Main Street at a point east of the crosswalk. This evidence, if allowed, would tend to strengthen and support the defendant's defense of contributory negligence as it would add weight to the testimony of the defendant that she saw plaintiff crossing at a point east of the crosswalk.

Our research has disclosed that where there is a conflict of evidence on an issue material to the determination of the question and it is felt that the existence of a habit causing a more or less settled or automatic reaction to physical or mental stimulus, presents a stronger relevancy as to what happened on these particular occasions than would the mere doing of an isolated act of a similar nature at another time.

In State v. Manchester and Lawrance Railroad (1873) 52 N.H. 528, a suit was

prosecuted for negligent homicide which occurred upon a railroad crossing and the evidence was in conflict as to whether the engineer and fireman of the railroad sounded the whistle or rang the bell. The court held that testimony was admissible as to the same train run by the same engineer and fireman having sometimes passed the train crossing without sounding the whistle or ringing the bell, as tending to show the same men would be more likely to have neglected performance of these duties upon the occasion in question.

In Craven v. Central Pac. R. Co., 72 Cal. 345, 13 P. 878, the appellant prosecuted an action to recover damages for injuries sustained while a passenger on one of the appellee's trains. The point of contention was whether the injury was caused by the sudden starting of the train without giving appellant a reasonable time to alight or by her negligence in jumping from the train while it was still in motion. The appellee successfully defended on the ground that appellant was injured on account of her own negligence in jumping off the car when it was in motion.

On the trial of the case the appellee offered and was allowed to adduce evidence that the appellant had, within the year, frequently traveled over the route in question, had frequently jumped off the cars while in motion and had been warned in so doing. The Supreme Court held it was not error to have admitted this evidence.

McCracken v. Village of Markesan, 76 Wis. 499, 45 N.W. 323, was a suit for personal injury caused by falling upon an alleged defective sidewalk. The defense was that the plaintiff was contributorily negligent by reason of intoxication. The jury returned a special verdict and found that the sidewalk was defective and that the defendant city should have known it and, secondly, that the plaintiff at the time of the injury, was so intoxicated it contributed to his injury and that he was guilty of want of ordinary care which directly contributed

to his injuries. In the trial of the action plaintiff had testified he was not intoxicated. The defendant had placed witnesses upon the stand who testified that he was intoxicated at the time. The case was dismissed and, on appeal, the Supreme Court held it was not error to have asked the plaintiff on cross-examination if he was not habitually in the habit of getting drunk; the court stating that this was proper cross-examination in view of the defense.

In Allard v. Northwestern Contract Co., 64 Wash. 14, 116 P. 457, which was a suit for personal injury sustained by the plaintiff from a blast set off in a stone quarry in which he worked, judgment for the plaintiff was reversed on appeal. The court stated it was error to have excluded evidence of habit of the plaintiff when blasts were fired near him, which evidence was to the effect that after being warned that a blast was about to be fired, the plaintiff did not get under cover. The court said that the proffered evidence was competent on the issue of contributory negligence pleaded and to controvert evidence of the plaintiff that no warning was given of the blast which caused the injuries.

In Hodges v. Hill, 175 Mo.App. 441, 161 S.W. 633, the plaintiff sued to recover the value of a race horse which was fatally injured while being ridden by plaintiff's son on a dark night on a highway, as a result of a collision between the horse and a single buggy being driven by the defendant. The accident caused the shaft of the buggy to break causing injury to the plaintiff's race horse from which it died. Neither the plaintiff's son, who was the rider, nor the driver of the buggy saw the other; but each testified that he heard the other coming and then slowed down and turned to the right to avoid collision. The evidence was in direct conflict; each said that the other was going fast. The court held that evidence that plaintiff's son was in the habit of riding the race horse at high speed along the particular highway at the place of the accident was admissible.

Bown v. City of Tacoma, 175 Wash. 414, 27 P.2d 711, was a suit for personal injuries sustained by an eleven-year-old boy who was run over by a truck which was backing up in an alley. The jury returned a verdict for the defendant and the plaintiff appealed. The court held that cross-examination of the boy who sustained the injuries as to his habit of riding on cars and bumpers in the alley where the accident happened, and adjoining streets, was proper on the issue of contributory negligence, and that it was not error to have permitted two other witnesses to testify as to the boy's habit in this respect.

In all of the foregoing cases, there were eyewitnesses to the occurrence upon which evidence of habit was admitted, but the evidence on the issue was in direct conflict.

 We stated earlier in this opinion that the course taken by the plaintiff in crossing Main Street on the particular day became an issue as a question of fact for determination by the jury. If the plaintiff crossed at the crosswalk, she had the right of way over the defendant's vehicle, but if she crossed at the point east of the crosswalk as contended by the defendant, the vehicle had the right of way. This is a critical issue in the trial. We believe that the rejected evidence was competent to go to the jury upon the theory that the plaintiff had been in the habit of crossing Main Street in returning from church at the point east of the crosswalk. The jury was entitled to consider that fact as tending to corroborate the evidence of the defendant who testified that she saw plaintiff at the time she was injured crossing at a point east of the crosswalk; that upon this question, there was direct conflicting evidence by the two parties who were adverse to each other and interested in the outcome of the action. The rejected evidence had some weight to show that the plaintiff's conduct at the time she was crossing Main Street was such as the defendant ascribed to her. It is not for the court to say what effect such evidence would have upon the minds of the jury, but it being material and going into a vital question in the case, we find it was admissible, if proper foundation is first laid, and that it was error to keep it from the jury, being prejudicial to the defendant's case. Where such evidence of habit is offered on the issue of negligence, it must be limited to conduct which constitutes a person's regular practice of meeting a particular situation with specific conduct, thus showing that the doing of such act and the conduct of the person in meeting a certain situation were practically automatic. It must not be too remote in time or place of the events under investigation, which in this case is the accident in which the plaintiff was injured.

The second class of specifications which we will consider involves instructions to the jury.

The first instruction which we will consider relates to the care required on the part of a pedestrian in crossing a street. Our statute provides that the driver of a vehicle shall yield the right of way to a pedestrian crossing the street within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling. Section 39–10–28(1), N.D. C.C.

Section 39–10–29(1), N.D.C.C., provides that every pedestrian crossing a roadway at a point other than within a marked crosswalk, or within an unmarked crosswalk at an intersection, shall yield the right of way to all vehicles on the street.

The trial court, instructing the jury in this case, stated:

"A pedestrian must exercise ordinary care at all times in crossing a street, whether crossing at a cross walk or at any other point on the street."

The Court also instructed the jury that "ordinary care" means:

" * * * that care which persons of ordinary prudence exercise in the

management of their own affairs in order to avoid injury to themselves or to others."

These instructions, considered by themselves, are correct. The court failed, however, to advise the jury that a person crossing a street at a point other than at a crosswalk, must use a greater degree of diligence and caution in the exercise of ordinary care than is required of a person who crosses at a crosswalk.

■ Ordinary care varies with the circumstances and the dangers involved. Chicago, M., St. P. & P. R. Co. v. Johnston's Fuel Liners, 122 N.W.2d 140 (N.D. 1963). The amount or degree of diligence and caution which is necessary to constitute ordinary care varies with the facts and the circumstances of each case. 65 C.J.S. Negligence § 11(3), p. 576 at 578.

■ Thus, a person who crosses a street at a point other than at a crosswalk, must use a greater degree of diligence and caution in the exercise of ordinary care than he would use when crossing at a crosswalk. When crossing at a point other than a crosswalk, he must exercise diligence commensurate with the greater danger arising from the fact that he does not have the protection, in making such crossing, of the statutory right of way. The duty of diligence and care required of such pedestrian in the exercise of ordinary care is commensurate with the danger present in the situation which he faces. The greater the danger, the greater the diligence and care required of him. Where circumstances present a high degree of danger such as he faces in crossing in the middle of a block, he is required to exercise a high degree of diligence and caution in the exercise of ordinary care, although this diligence amounts only to ordinary care in view of the circumstances. Thus, what is ordinary care in the face of great danger would be extraordinary care in the case of ordinary circumstances, and what would be ordinary care under ordinary circum-

stances would fall far below the required standard of ordinary care in the case of great danger.

■ The instruction as given by the trial court, that "a pedestrian must exercise ordinary care at all times in crossing a street, whether crossing at a crosswalk or at any other point on the street," while technically correct, could well have misled the jury into concluding that no greater diligence or caution was required of the plaintiff in exercising ordinary care while crossing in the middle of a block than would be required of her when crossing at a pedestrian crossing. The court therefore erred in not relating the degree of caution to the circumstances.

The next specification relating to instructions is that the court erred in instructing the jury that the violation of a statutory duty as prescribed by law is not, of itself, negligence, but that it is a circumstance which the jury might take into consideration in determining whether or not the party violating such statutory duty was negligent. In this connection the court instructed the jury:

"I further instruct you that the violation of a statutory duty as prescribed by law in the operation of a motor vehicle or as it pertains to the duty of a pedestrian is not in and of itself negligence, but that it is a *circumstance* which you may take into consideration in determining whether or not the party so violating was negligent." [Emphasis added.]

■ The portion of this instruction which stated that such violation of a statutory duty is not, of itself, negligence, is proper. However, we have often said that such violation is evidence of negligence, although not negligence as a matter of law. Gravseth v. Farmers Union Oil Co. of Minot, 108 N.W.2d 785 (N.D.1961); Erdahl v. Hegg, 98 N.W.2d 217 (N.D.1959); Renschler v. Baltzer, 95 N.W.2d 574 (N.D. 1959); Attleson v. Boomgarden, 73 N.W.2d

448 (N.D.1955); and Imus v. Huber, 71 N.W.2d 339 (N.D.1955).

 The plaintiff contends that there is no distinction between "circumstance" and "evidence". There may not be much distinction between saying that the violation of a statutory duty is a circumstance which the court may consider in determining whether the plaintiff was negligent, and in saying that such statutory violation is evidence of negligence which the jury may consider in making such determination. Whether this was error need not be determined in this case, inasmuch as a new trial is being granted. We do believe, in view of the long line of decisions of this court in which we have held that a violation of a statutory duty is evidence of negligence to be considered by the jury, that the court's instruction on this point should be in accordance with approved practice and the jury should be advised that the violation of a statutory duty is evidence of negligence.

The last group of specifications of error alleges it was error for the trial court to have refused to give six requested instructions. The defendant only makes the general allegation that they were applicable and should have been given. No argument is made and no authorities are cited to support the contentions. In view of the fact that a new trial must be granted for reasons heretofore set forth, and that on retrial similar problems are not likely to arise, we do not pass on this group of specifications here.

The judgment is reversed and a new trial is granted.

STRUTZ, ERICKSTAD, PAULSON and KNUDSON, JJ., concur.