Lyle DIMOND and Willard Dimond,
Plaintiffs/Appellants,

v.

Sandra E. KLING et al., Defendants, Third-
Party Plaintiffs and Appellees.

Civ. No. 8953.

Supreme Court of North Dakota.

June 28, 1974.

Rehearing Denied Aug. 26, 1974.

William R. Mills, Bismarck, for plaintiffs/appellants.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendants, third-party plaintiffs and appellees.

TEIGEN, Judge.

This is an appeal by the plaintiffs, a boy who was injured in an automobile-bicycle collision and his father, from the judgment of the district court, based on a jury verdict, dismissing their complaint against the driver of the automobile and her employer.

On April 15, 1968, the plaintiff, Willard Dimond, then age 14, and one Daniel Wintermeyer, then age 16, were home early from school for the day. They were conversing with several other children in the trailer court where they lived, which is located south of the intersection of Bismarck Avenue and South 9th Street in Bismarck, North Dakota. Willard and Daniel decided to go to a store located on 9th Street, several blocks to the north, to purchase popsicles for themselves and the others. Since Willard's bicycle was not functioning properly, both boys rode on the bicycle owned by Wintermeyer. His bicycle was a 24 or 26 inch Huffy bicycle with modified handlebars, called at various points in the record, "stingray," "butterfly," "bat wing," or "resembling the horns on a long-horn steer." Whatever the description, it appears that such handlebars consist of a small level segment in the center, attached by a clamp to the front-wheel steering column. From thence the handlebars veer sharply upward, slightly outward, and back toward the rider with the ends of the handlebars veering downward.

After Wintermeyer purchased the popsicles, using his own money, they proceeded back toward the trailer court. Wintermeyer was on the bicycle seat peddling and steering, and Dimond sat on the handlebars with his arms wrapped around them and the popsicles in a box on his lap.

The defendant, Sandra Kling, an employee of National Car Rental of Bismarck, had taken a 1968 Pontiac Tempest automobile to Howard Thompson Motors, Inc., of Bismarck for cleaning. Thereafter, she proceeded toward the airport to return the car for use by National Car Rental customers. As she proceeded south on South 9th Street, and while in the process of passing the two boys on the bicycle, the two vehicles sideswiped and the boys were injured.

The plaintiff, Willard Dimond, through his guardian, sues for damages for personal injuries and his father, Lyle Dimond, sues for medical expenses incurred as a result of the same injuries. The action was brought against Sandra Kling, the driver of the automobile, and National Car Rental Systems, Inc., and Howard Thompson Motors, Inc., as the alleged owners of the automobile.

All defendants answered, denying the negligence of Sandra Kling and alleging the negligence of Wintermeyer and Dimond as joint venturers, and the contributory negligence of both Wintermeyer and Dimond. Kling served a third-party complaint for liability over, alleging the sole or contributory negligence of Wintermeyer. Wintermeyer cross-complained for damages allegedly due to the negligence of Kling.

A Bismarck police officer, Eugene Hetland, investigated the accident and interviewed the parties. His testimony was taken by deposition in the State of Hawaii, where he had moved.

The case was originally brought on for trial with the Dimonds and Wintermeyer as coplaintiffs, and Kling, Howard Thompson Motors, Inc., and National Car Rental Systems, Inc., as defendants. On the third day of the trial, as a result of questions raised about the admissibility of the Hetland deposition for use against Wintermeyer, the claims of the Dimonds were severed for purposes of trial from those of Wintermeyer.

Upon conclusion of the trial, the jury returned its verdict in favor of the defendants and against the Dimonds. From the judgment on this verdict dismissing the complaint, the plaintiffs appeal.

The plaintiffs allege twelve issues of error. We find it necessary to consider at length only three of them.

The first issue for consideration is whether the trial court erred in submitting the question of joint enterprise to the jury and whether the instruction correctly stated the law. We find it necessary to the resolution of this question to review the state of the law with respect to vehicular accidents.

■ Ordinarily, the negligence or contributory negligence of the driver of a host automobile is not imputed to a guest who has no control over the movement of the automobile. Only the guest's own contributory negligence will bar recovery against the negligence of a third person, and if the accident is attributable solely to the negligence of the host driver, the guest may recover only from him. Linington v. McLean County, 161 N.W.2d 487 (N.D. 1968); Linington v. McLean County, 146 N.W.2d 45 (N.D.1966); Fisher v. Suko, 111 N.W.2d 360 (N.D.1961); Wilson v. Oscar H. Kjorlie Co., 73 N.D. 134, 12 N. W.2d 526 (1944); Bagan v. Bitterman, 65 N.D. 429, 259 N.W. 268 (1935); Billingsley v. McCormick Transfer Co., 58 N.D. 921, 228 N.W. 427 (1929); Amenia & S. Land Co. v. Minneapolis, St. P. & S. S. M. Ry. Co., 48 N.D. 1306, 189 N.W. 343 (1922).

Although this court has not heretofore determined the question, other states appear to be virtually of one mind that the same rules generally govern the relationship of a bicycle driver and his passenger. Gellerson v. Rasins, 248 Md. 75, 234 A.2d 758 (1967); Linzey v. Delgado, 246 Cal. App.2d 504, 54 Cal.Rptr. 762 (1966); Harris v. Morris, 259 S.W.2d 469 (Ky.1953); Hensley v. Briggs, 230 N.C. 114, 52 S.E.2d

5 (1949); Johnson v. Shattuck, 125 Conn. 60, 3 A.2d 229 (1938).

One exception to the previously stated rule that an automobile driver's negligence or contributory negligence will not be imputed to the passenger, so as to bar the passenger from recovery for damages, is where the driver and passenger are engaged in a joint enterprise. Bolton v. Wells, 58 N.D. 286, 225 N.W. 791 (1929); Christopherson v. Minneapolis, St. P. & S. S. M. Ry. Co., 28 N.D. 128, 147 N.W. 791 (1914).

The defendants alleged here that Dimond and Wintermeyer were engaged in a joint enterprise in riding to the store to purchase the popsicles, and the court, by an instruction, submitted the question for the jury's consideration. Dimond asserts that this was error on either of two alternate grounds, viz., that two minors may not, as a matter of law, be members of a joint enterprise for the purpose of imputing liability, or that, under the evidence in this case, there was no joint enterprise as a matter of law.

We have not heretofore considered the question of whether two minors may enter into a joint enterprise, and other states which have considered the question in relation to automobile accident cases are divided. The State of Washington has held that minors may engage in a legally recognized joint venture, Paulson v. McMillan, 8 Wash.2d 295, 111 P.2d 983 (1941), while the states of Missouri, Bell v. Green, 423 S.W.2d 724 (Mo.1968), and Texas, Fuller v. Flanagan, 468 S.W.2d 171 (Tex.Civ. App.1971), have held that they may not, at least for the purpose of imputing negligence.

In Paulson v. McMillan, 111 P.2d 986, *supra,* the court analogized a joint venture to a partnership, and said:

"We find no dissent from the proposition that a minor may, by contracting with an adult, or even with other minors, create a partnership status. There would

seem to be even more reason to apply the same rule to joint adventure * * * [which] contemplates an undertaking of a mere temporary nature * * * "

In Bell v. Green, 423 S.W.2d 730, 731, *supra,* the court discussed joint venture from the standpoint of agency:

" * * * The same principle excludes consideration here of the theory of a joint venture, for that relationship is founded upon a contract of express or implied partnership or agency. * * * [A joint venture] * * * can exist only by voluntary agreement of the parties to it. * * * It is in the nature of a partnership, generally governed by the same rules of law, the principal difference being that a joint adventure is usually limited to a single transaction. * * * Since an infant cannot make a valid contract and cannot become a partner, he may not be a member of a joint venture within the legal meaning of the term. The doctrine of joint venture has sometimes been applied in cases arising from automobile collisions, usually to impute contributory negligence [cit. omitted], but we fail to see how it can logically be applied to a minor. * * *

* * * * * *

" * * * Such liability, however evasively expressed, rests upon imputed negligence through a relationship of principal and agent. We do not choose to declare, as a matter of common law, that a minor may appoint an agent for one purpose but not for any other."

The Texas court also discussed the question in terms of agency. In Fuller v. Flanagan, 468 S.W.2d 176, *supra:*

"The weight of authority in the United States follows the rule that although an infant is liable for torts that he directly commits, the negligence of the infant's alleged servant or agent cannot be imputed to the minor under the doctrine of respondeat superior. * * *

* * * * * *

"The 'joint enterprise' doctrine is founded on principles of agency [citation omitted]. Because this is true, the rule forbidding the imputing of negligence of the alleged agent to the minor would also apply to cases where the minor is engaged in a joint enterprise with the person who commits the negligent act in question."

■ North Dakota recognizes both a doctrine of "joint adventure"—Kelly v. Lang, 62 N.W.2d 770 (N.D.1954); Brudvik v. Frosaker Blaisdell Co., 56 N.D. 215, 216 N.W. 891 (1927); Gehlhar v. Konoske, 50 N.D. 256, 195 N.W. 558 (1923)—and one of "joint enterprise" for the purpose of imputing liability. Larson v. Meyer, 135 N.W.2d 145 (N.D.1965); Bolton v. Wells, *supra;* Christopherson v. Minneapolis, St. P. & S. S. M. Ry. Co., *supra.*

In 46 Am.Jur.2d Joint Ventures, § 5, at 26, we find the following:

"Although the terms 'joint venture' and 'joint enterprise' have been used interchangeably in some instances, a 'joint enterprise' is generally distinguished from a 'joint venture' in that the former is an undertaking for the mutual benefit or pleasure of the parties, while the latter is limited to business enterprises. * * *

"Joint enterprise as a legal concept is not a status created by law; it is a *contractual relationship of mutual agency* employed to represent merely a unity between persons in the pursuit of a common purpose, as a result of which the negligence of one participant may be imputed to another * * * " [Emphasis supplied.]

We next turn to our statutes with respect to the status of minors where contracts, agency, torts and liability for negligence are concerned, to determine what, if any, pattern emerges.

Section 9–02–01, N.D.C.C., provides that all persons are capable of contracting except minors and persons of unsound mind. Section 9–02–02, N.D.C.C., provides that a minor's capacity to contract is *only such as is specified by statute.* Section 14–10–09, N.D.C.C., provides that a minor *cannot give*

*a delegation of power* and may not make a contract relating to real property or personal property not in his immediate possession or control. Section 14–10–10, N.D.C. C., provides that a minor may otherwise contract in the same manner as an adult, subject only to his power of disaffirmance.

■ Section 14–10–11, N.D.C.C., permits a minor to disaffirm his contracts before reaching majority, or within one year thereafter.[1]

Under Section 32–03–39, N.D.C.C., the parents of a minor may be held liable for damages caused by the child's malicious or willful destruction of property, to a maximum of $300. Section 14–10–03, N.D.C.C., provides that a minor is liable civilly for a wrong done *by him,* in like manner as any other person. Under Section 39–06–09, N. D.C.C., negligence of a minor driver of a motor vehicle is imputed to the person who signed his driver's permit or license application, which person is jointly liable with the minor for damages caused by the minor's negligence.

The pattern which emerges from this perusal of our statutes is one which seeks to limit the contractual capacity of minors, yet holds him liable for *his own* tortious acts.

■ We believe the policy of our statutes is in harmony with the decisions cited above from Missouri and Texas. Since a "joint enterprise" is a "contractual relationship of mutual agency," 46 Am.Jur.2d, *supra,* and since a minor is prohibited by our statutes from giving a delegation of power, we must conclude, as a matter of law, that two minors may not be members of a "joint enterprise" for the purpose of imputing the negligence or contributory negligence of one infant to another.

■ One further aspect of this issue is deserving of comment. Whether any person is negligent or not depends upon the standard of care to which he is to be held.

While an adult is held to the standard of a reasonable man, an infant is held to a standard of care which would be exercised by an ordinarily prudent child of his own age, capacity, intelligence and experience. Moe v. Kettwig, 68 N.W.2d 853 (N.D. 1955). Thus while certain conduct on the part of a sixteen-year-old minor may constitute negligence, the same act committed by a fourteen-year-old may not because he is younger, less intelligent, less capable or less experienced. Yet if we were to hold that the contributory negligence of a six-,teen-year-old member of a joint enterprise is imputable to other members, the effect would be to hold other members to a sixteen-year-old standard, whether they be fourteen, twelve, or ten years of age. Such a result is undesirable. No such problem is presented where two adults are engaged in a joint enterprise because both have the power to appoint agents and both are held to the standard of a reasonable man, and where an adult and minor are concerned, it may be presumed that the adult exercises some measure of control over the minor.

■ Further, lest our holding be misunderstood, if Dimond is himself guilty of negligence or contributory negligence, which proximately contributed to his injury, he may not, of course, recover, nor may his father. But the right of the Dimonds to recover may not be barred by imputing to them any negligence or contributory negligence of Daniel Wintermeyer. We therefore hold that it was error for the court to instruct on joint enterprise.

The second issue concerns the deposition of Officer Hetland. The plaintiffs allege that the court erred in admitting the deposition of the police officer into evidence.

The record shows that on the third day of trial the question arose as to whether Daniel Wintermeyer had been represented by counsel at the time the deposition of Officer Hetland was taken.

1. Thus the contract of a minor is not void, but is made voidable by the power of a minor to disaffirm. As between two minors, a contract is a bit more tenuous than one between a minor and an adult, since either minor may disaffirm.

Under Rule 32(a) of the North Dakota Rules of Civil Procedure, a deposition "may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof * * *." Since Wintermeyer's counsel objected to portions of the deposition, the court thereupon severed the Wintermeyer and Dimond cases, and the deposition was thereafter offered and received into evidence.

Though counsel for Dimond objected to portions of the deposition, arguing that they were hearsay, he acquiesced, indeed actively sought admission of the remainder thereof. The record of this hearing contains the following statements:

"Mr. Mills: Dimond does not object and wants most of the deposition except the hearsay. * * *

* * * * * *

"Mr. Mills: There are certain parts of the deposition to which we object and the rest of it we are fully in accord that it should be in because [of] the actual observations.

* * * * * *

"Mr. Mills: * * * Now part of the deposition relating to what the investigating officer saw, what he observed, the measurements he took, that I believe is relevant to the case and I believe it should be admitted and we want it admitted."

█ The issue of whether the deposition, as a whole, should have been admitted was not timely raised at trial and we are therefore foreclosed from considering it on appeal. Grenz v. Werre, 129 N.W.2d 681, 687 (N.D.1964); Grant v. Jacobs, 76 N.D. 1, 32 N.W.2d 881 (1948).

However, certain portions of the deposition were objected to while they were being read from the witness chair in the lower court, specifically certain admissions made by Wintermeyer to Hetland some forty minutes to an hour after the accident while Wintermeyer was in the emergency room at the hospital. The specific portion of the deposition to which objection is made states:

"Q. What was the substance of your conversation with Mr. Wintermeyer?

"A. At the moment I walked in the door, before I had an opportunity to say anything, he looked at me and said, 'I did wrong, didn't I?' and I mentioned, 'Yes, you did' and I said, 'You were riding double?' and he said, 'Yes.'

"I asked him if he was aware that it was against the law and that his bicycle could have been impounded and he stated, 'Yes.' "

Dimond objected to these statements on the ground that they were inadmissible hearsay. The trial court held that they were made sufficiently close to the time of the accident to constitute a part of the *res gestae*.

█ The question of whether a statement is part of the *res gestae* is ordinarily one which "can be better determined by the trial judge who has the opportunity to observe the witnesses and evaluate the evidence." Trautman v. New Rockford-Fessenden Co-op Tr. Ass'n, 181 N.W.2d 754, 760 (N.D.1970).

█ The evidence shows that the interview between Hetland and Wintermeyer took place in the emergency room at the Bismarck Hospital some forty minutes to one hour after the accident. Dimond claims that Wintermeyer was under the influence of a depressant drug, under the effect of which, Dimond asserts, one tends to blame oneself. Though there was testimony that Wintermeyer was given a medication, Dimond offered no testimony on when the medication was administered, nor was expert testimony offered on the effect of such medication.

In view of the discretion vested in the trial court with respect to the *res gestae* issue, we conclude that the trial court did not err in holding that Wintermeyer's statements were part of the *res gestae*.

While we are not convinced that the statements made by Wintermeyer, who was

no longer a party to the action, are admissible against Dimond (29 Am.Jur.2d Evidence, § 658, at 709), no other objection was raised to the admission of these statements and our review is limited to those objections which are timely and specific. Grenz v. Werre, *supra.*

The final issue we find necessary to discuss at length concerns Kling's speeding convictions.

Kling testified that she was traveling within the speed limit at the time of the accident, having slowed to approximately five to ten miles per hour at the point of collision. On cross-examination the Dimonds sought to introduce proof that subsequent to this accident and before this trial Kling had three times been convicted of speeding, over approximately a two-year period in three separate cities. The purpose stated by counsel for seeking admission of this evidence was not for impeachment but to show that Kling's habit or custom was to speed, and that she was not, for that reason, a competent judge of her own speed at the time of this accident. Error is alleged in the trial court's refusal to admit this evidence for this purpose.

In Glatt v. Feist, 156 N.W.2d 819, 28 A.L.R.3d 1278 (N.D.1968), we stated in Syllabus ¶ 4:

"Where evidence of habit is offered on the issue of negligence, such evidence must be limited to conduct which constitutes a person's regular practice of meeting a particular situation with specific conduct, thus showing that the doing of the act claimed to be habit and the conduct of the person in meeting a certain situation were practically automatic. The conduct which is claimed to have constituted habit must be repeated often and must not be too remote in time or place from the time or place of the occurrence being considered in the action before the court."

We find no error in the court's refusal to admit proof of subsequent speeding convictions, since these three subsequent convictions do not meet the tests stated in *Glatt.* We believe that the fact that one may be convicted of speeding violations does not establish a "regular practice" of speeding. Further, the conditions under which these subsequent convictions occurred were remote, both in time and place, from Kling's conduct prior to this accident. We cannot say, on the basis of these three subsequent convictions, that practically every time Kling drives she speeds, and even if we were to accept that premise, we could not accept the conclusion for which Dimond contends, i. e., that one whose habit or custom when driving is to speed is not a competent judge of speed. We see no relation between the speeding convictions and Kling's ability or competence to judge speed, as there is no evidence that she was not cognizant of the fact that she was speeding at the time of the arrests on which she was subsequently convicted. Further, the record does not show whether she was convicted on her plea of guilty or after trial. If she pleaded guilty, it may be an indication that she was competent in this area.

As to the other issues raised, we find: (1) no error in the instructions on speed limits in the area; (2) no error in the court's refusal to admit into evidence testimony to the effect that other children ride double on bicycles, since the test is not what other children do, but what an ordinarily prudent child of Wintermeyer's and Dimond's age, capacity, intelligence and experience would do; (3) that Section 39-10-60, N.D.C.C., prohibits riding double on bicycles unless the bicycle is designed and equipped to carry more than one person, and that there was no basis, in the absence of competent testimony, for believing that the modified handlebars on this bicycle were designed for use as anything other than handlebars; (4) that the instructions on the standard of care of an adult approaching children were adequate; (5) no error in the trial court's refusal to give an instruction on the doctrine of last clear chance as the doctrine was not applicable on the basis of the evidence adduced;

(6) that it was proper to give an instruction on contributory negligence under the evidence developed here, but, as we held above, only Dimond's contributory negligence proximately contributing to his injury would bar recovery by him and his father; and (7) that the court did not err in its instructions that violations of statutes or ordinances governing the use of bicycles upon a highway may be considered by the jury as evidence of negligence, if such violations contribute to the cause of the accident.

For the reasons aforesaid, we conclude that the judgment must be reversed and the cause remanded for new trial.

KNUDSON, Acting C. J., VOGEL and PAULSON, JJ., and MUGGLI, District Judge, concur.

ERICKSTAD, C. J., deeming himself disqualified did not participate; NORBERT J. MUGGLI, Judge of the Sixth Judicial District sitting in his place.