127 Cal.App.2d 511 (1954)
ERNEST GUERRA, Respondent,
v.
IGNAZIO BALESTRIERI, Appellant.
Civ. No. 15867. 
California Court of Appeals. First Dist., Div. One. 
Sept. 27, 1954.
 Hoge, Fenton & Jones for Appellant.
 James F. Boccardo and Edward J. Niland for Respondent.
 WOOD (Fred B.), J.
 Plaintiff recovered a money judgment for injuries received when an automobile driven by him was hit by an automobile driven by defendant at the intersection of San Carlos and Prevost Streets, San Jose.
 Defendant does not question the sufficiency of the evidence to support the verdict except that he claims that plaintiff was *514 guilty of contributory negligence as a matter of law. He challenges a number of the instructions given, principally upon the ground that they find no basis in the evidence. It will facilitate the discussion of these points if we first summarize the salient features of the testimony.
 San Carlos is an east-west street. Prevost runs north and south. Each is 40 feet wide with two lanes for traffic with parallel parking space on either side. At this intersection there are stop signs on Prevost, none on San Carlos. Plaintiff was traveling east on San Carlos; defendant, south on Prevost. It was about 3:30 p. m., February 6, 1951.
 Plaintiff testified that as he approached the intersection he was proceeding at a speed of 25 miles per hour; when about 150 feet from it he began to slow down and when 100 feet away was traveling at 15 miles per hour. When 20 to 30 feet from the intersection, he looked to his left on Prevost Street, and was able to see 20 or 30 feet on Prevost Street from the intersection. He saw no cars there nor did he see any car stopped at the stop sign. He then looked to the right and, the front end of his car being at the west edge of the intersection and he seeing no cars coming up Prevost Street from that direction, he stepped on his gas pedal so he could cross and increased his speed from 15 to 20 or 25 miles per hour. "Then," said plaintiff, "when I did that, ... looking ahead, all of a sudden I heard something, and, you know, by the time I knew, I was with my feet up and my head down." His car was hit on its left side when its front end was about half through the intersection. The point of impact was about 12 feet east of the west line and 22 feet south of the north line of the intersection. His car then swerved to the right and forward, hitting the left rear of a car parked on the south side of San Carlos, just beyond the intersection. It came to rest on its right side, about half a car length beyond the parked car.
 Defendant testified that he stopped at the stop sign on Prevost, coming up to the white line; that while stopped he saw no autos approaching from the west on San Carlos; he had a clear view 125 feet westerly from his car, on San Carlos; that just as he started to move from the stop sign he looked again to his right and saw an automobile approaching from the west, about 125 feet away; thinking that he could make it he continued moving; the next time he saw that car was when he was in the intersection and it was two or three feet from him; that when he was in the intersection, *515 "that is all I saw, was this car, just swish, right in front of me, that's all."
 A police officer talked with defendant at the scene of the accident shortly after its occurrence. He asked defendant whether or not the latter stopped for the stop sign on the north side of San Carlos. Defendant "turned around and looked toward the north, turned around and said 'I stopped.' " The officer asked him his distance from the other car when he first noticed danger and he said it was 2 or 3 feet. The officer also asked him when he first noticed the other car and defendant said "2 or 3 feet." Upon the witness stand defendant denied that the latter question was asked of him. There was an odor of alcohol about the defendant there at the scene of the accident. Upon the witness stand defendant admitted he had had a glass of wine with his meal about three-quarters of an hour before the accident.
 [1] (1) The argument that it appears as a matter of law that plaintiff was guilty of contributory negligence starts with the assumption that it also appears as a matter of law that defendant stopped at the stop sign before proceeding into the intersection. With that as a premise defendant infers that plaintiff should have seen defendant's vehicle as plaintiff proceeded into the intersection and that such negligent failure to see contributed to the accident.
 That is an invitation to this court to weigh the evidence, accept defendant's testimony that he did stop, and reject plaintiff's testimony that no car was in sight when, from a point 20 to 30 feet west of the intersection, he looked 20 to 30 feet up Prevost Street. It was the function of the jury to resolve such conflicts, a conflict which in this case the jury resolved in favor of plaintiff. It is no answer to say that defendant's testimony that he did stop was uncontradicted in the sense only that no person testified that he was observed entering without stopping. It was indirectly contradicted by other evidence in the case. [2] Moreover, the trier of the facts is not required to believe everything that a witness says even if uncontradicted. (Blank v. Coffin, 20 Cal.2d 457, 461 [126 P.2d 868]; Hanna v. O'Connor, 106 Cal.App.2d 760, 767 [236 P.2d 181].) [3] A reviewing court must look to the evidence which is favorable to the finding or verdict and to inferences reasonably deducible therefrom, when ascertaining the sufficiency of the evidence.
 [4] Plaintiff, having looked to his left without seeing any *516 oncoming traffic, was under no continuing obligation to keep looking in that direction (Gilkey v. Crow-Harr Lbr. Co. (1951), 103 Cal.App.2d 150, 152 [229 P.2d 3]; Lundgren v. Converse (1939), 34 Cal.App.2d 445, 447 [93 P.2d 819].) He had a right to assume, moreover, that any vehicle approaching on Prevost Street would obey the law, stop at the stop line and yield the right of way to plaintiff's car on the through highway. (Jobe v. Harold Livestock Com. Co. (1952), 113 Cal.App.2d 269, 274 [247 P.2d 951]; Veh. Code, 82.5, 552, subd. (a).)
 (2) Defendant claims there was insufficient evidence to warrant the giving of instructions concerning the presumption of negligence which arises when a person drives an automobile while under the influence of intoxicating liquor, conduct proscribed by section 502 of the Vehicle Code. We do not so view it.
 The question is whether or not there was substantial evidence that defendant was driving while under the influence of intoxicating liquor. In conducting the inquiry we must consider all the evidence and all reasonable inferences that tend to support a finding, disregarding all conflicts, a principle well expressed in Jones v. Yuma Motor F. Terminal Co., 45 Cal.App.2d 497, 500-501 [114 P.2d 438], when testing the propriety of giving an instruction on the doctrine of last clear chance: "... we must consider all of the evidence before the court regardless of which party presented it and, disregarding conflicts, must view the evidence in the light most favorable to the contention that the doctrine is applicable, indulging every reasonable inference supporting the application of the doctrine. If under any reasonable view of the evidence the doctrine could apply it was proper to give instructions on the subject." [5] Concerning the propriety of giving an instruction on the subject here involved, this principle has been expressed in these words: "While there is no legal presumption that one is intoxicated because he has taken a drink of liquor, it is within the province of the trial court or the jury to take into consideration the number of drinks of intoxicating liquor which one has imbibed, and his subsequent actions, in determining whether at the time of the accident such person is in fact intoxicated, and if intoxicated to such a degree as hereinbefore defined, to render judgment to that effect." (Knickrihm v. Hazel, 3 Cal.App.2d 721, 730 [40 P.2d 305].) Judicial precedents are numerous but, naturally, the circumstances in each case differ, no two cases being *517 identical upon their facts. The California cases have been collected in 24 California Jurisprudence 830-834, Trial, section 95, and in 7 California Jurisprudence 2d 306-308, Automobiles, section 394.
 [6] In the instant case the police officer testified there was an odor of alcohol about defendant after the accident. Defendant admitted having imbibed liquor less than an hour prior to the accident. If the jury believed the officer's testimony that defendant admitted not seeing plaintiff's car until he was two or three feet from it and disbelieved defendant's testimony that he stopped at the stop sign and then proceeded across the intersection in second gear, the jury well might infer that defendant drove at such a speed and with such a lack of perception of his surroundings that, coupled with the admitted drinking of liquor, reasonably indicated that he was driving his car while under the influence of intoxicating liquor. The jury was not bound by his statement that he drank only one glass of liquor.
 The basic error in defendant's analysis of this issue is that he gives full weight to his testimony that he drank only one glass of wine that day, that he stopped at the intersection, and that he was only in second gear at the time of the acciden. That, in effect, is to usurp the jury's function of weighing the evidence and resolving conflicts.
 [7] Moreover, as expressed in Caccamo v. Swanston, 94 Cal.App.2d 957, 971-972 [212 P.2d 246], "the evidence well supports the verdicts of the jury on the other phase of the case. '... even though the evidence may not be sufficient to sustain a cause of action or defense to which an instruction applies, a reversal may not be had upon that ground if the evidence as to other causes of action or defenses is sufficient to sustain the verdict.' (Brandes v. Rucker- Fuller Desk Co., 102 Cal.App. 221, 228 [282 P. 1009].)"
 [8] Of the instructions given, defendant claims the following erroneous: "Any person is under the influence of intoxicating liquor within the meaning of this statute if intoxicating liquor has so far affected the nervous system, brain, or muscles of the driver of an automobile as to impair to an appreciable degree his ability to operate his car in the manner that an ordinarily prudent and cautious person in the full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions. You are further instructed that under this section it is not *518 necessary that the person accused should be so-called dead drunk or helplessly intoxicated; but if you shall be convinced by a preponderance of the evidence in this case that the Defendant was in such condition from the use of intoxicating liquor, that it so affected his acts, conduct or movements that the public or persons coming in contact with him could readily see and know it was affecting him in this respect and in such condition the Defendant was operating his motor vehicle at the time and place of the happening of the accident, then the Defendant was under the influence of intoxicating liquor within the meaning of the Vehicle Code."
 Defendant takes exception to the word "accused" in the second sentence of this instruction, as tending to prejudice the defendant in the minds of the jury. We perceive no such effect. It is a term frequently used in civil actions and in its context had no opprobrious connotation. It is comparable in this regard to the expression "guilty" of contributory negligence which appears three times in one of the instructions given at the request of the defendant.
 [9] Defendant also criticizes the use of the words "such condition" in the second sentence of this instruction. He claims they refer back to the words "dead drunk or helplessly intoxicated." That is not a reasonable interpretation. It seems obvious that the words "such condition ... that" refer forward, not backward, to the clause beginning "it so affected his acts" etc. It is, thus, possibly too favorable to the defendant. (See People v. Dingle, 56 Cal.App. 445, 451-453 [205 P. 705]; People v. Aguilar, 140 Cal.App. 87, 94-95 [35 P.2d 137, 142].)
 [10] (3) Defendant claims error in the instruction of the jury as to plaintiff's life expectancy, upon the asserted ground that there was no evidence that any of plaintiff's injuries are permanent in nature, that testimony on that subject was conjectural, speculative and insufficient.
 A doctor, asked how long the symptoms he had described would continue, testified: "Well, in this particular case, due to the fact that when I examined him this last time, which was approximately almost to the day two years post injury, and still finding complaints of pain and ache and limitation of motion, over that prolonged period, the estimation or prognosis as regards to the future are more guarded, I mean more serious. Frequently in this type of neck injury a patient will continue to have symptoms indefinitely" and "It may *519 last forever; it may become as he gets older, it may get worse; he may improve somewhat. After two years, presenting limited motion and pain, as I say, the prognosis is serious." From such testimony the jury could reasonably conclude that plaintiff was reasonably certain to experience some pain and disability for the rest of his life. Plaintiff testified that he was experiencing pain and difficulty of movement: "When I have to pull the big end of a wrench since I had the accident I don't try to do it because it hurts when I pull. It is when I bend over, also my knee when I bend over it hurts. Q. Does your head hurt you at all now? A. Yes. Q. In what way? A. By moving it, it hurts me in my back"; also that "after I get some cold or something like that, I still get those times when I spit blood."
 This evidence furnished a sufficient basis for instructing the jury on the subject of plaintiff's life expectancy. Authority, if authority be needed for this view, is furnished by Ostertag v. Bethlehem etc. Corp., 65 Cal.App.2d 795, 805-807 [151 P.2d 647], and Paolini v. City & County of San Francisco, 72 Cal.App.2d 579, 591-592 [164 P.2d 916].)
 [11] (4) Defendant claims the following instruction was repetitious of other instructions and erroneously presented the issue of impairment of earning power: "If you find that Plaintiff is entitled to recover, you may award him such damages within the amount claimed as in your opinion will compensate him for the pecuniary damage he has proven to have been sustained by him and proximately caused by the wrong complained of. In estimating the amount of such damages you may consider the physical and mental pain, suffering, if any, the extent of grief and suffering, mental or physical, if any, its duration and severity, and the loss of time and value thereof and the loss of earning capacity."
 We perceive no such degree of repetition as would prejudice defendant's case in the minds of the jury. [fn. *]
 From the evidence of plaintiff's impaired ability to perform certain phases of his work as a mechanic the jury could reasonably conclude that plaintiff's future capacity for work would be lessened because of his injuries. The questioned instruction permitted but did not compel such a conclusion. *520 The situation here is very like that which obtained in Burr v. Goss, 91 Cal.App.2d 351, 356 [205 P.2d 61].
 [12] (5) Defendant complains of an instruction that the jury may, in assessing damages, if any, take into consideration the decrease in the value of the dollar, upon the ground that it merely calls attention to an otherwise commonplace fact and unfairly and unjustly tends to increase the jury award.
 This point is not well taken, for the reasons given in Burke v. City & County of San Francisco, 111 Cal.App.2d 314, 320-322 [244 P.2d 708].
 (6) Finally, defendant takes exception to the giving of an instruction concerning the cost of medical care. He claims error because no evidence of the cost of such services was introduced, although there was some evidence of the nature and extent of the services rendered.
 [13] The proper measure is the reasonable value of such services, not the amount paid or incurred therefor, although the amount paid or incurred would be some evidence of value. (Townsend v. Keith, 34 Cal.App. 564 [168 P.2d 402].) There should be some evidence concerning the value of professional services of a physician and surgeon. There was no such evidence in this case.
 [14] However, we fail to see how the defendant could have been prejudiced. The instruction expressly limited the recovery for such items to the reasonable value thereof "not exceeding the cost to the plaintiff," and there was no evidence of any such cost to him. This is like the similar instruction in Castro v. Giacomazzi Bros., 92 Cal.App.2d 39 [206 P.2d 688], which limited recovery to "the sum that will fairly and reasonably compensate plaintiffs, or either of them, for the expenses, if any, that each has reasonably and necessarily incurred or paid ..." (P. 46.) Of that this court said: "The amount was to be computed, 'if any.' If there was no evidence of medical expenses, there was no necessity to give the instruction, but it has not been shown that defendants were prejudiced thereby." (Pp. 46-47.)
 [15] The $5,000 verdict does not impress us as excessive or shocking, nor as indicative of passion or prejudice upon the part of the jury. Plaintiff is a young man who has a life expectancy of nearly 40 years. Aside from elements of special damage, $5,000 represents only a little over $125 a year for the remaining years of his life expectancy.
 The judgment is affirmed.
 Peters, P. J., and Bray, J., concurred.
NOTES
[fn. *] *. Plaintiff explains that this instruction did contain certain repetitious matter when he submitted it to the court but that the court deleted the same before giving the instruction to the jury. The record shows the instruction only as it appeared when read to the jury.