Daryl KLEIN, Plaintiff and Respondent,

v.

Robert HARPER, Defendant and Appellant.

Civ. No. 8636.

Supreme Court of North Dakota.

April 22, 1971.

Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, for defendant and appellant.

Lanier & Knox, Fargo, and John T. Paulson, Valley City, for plaintiff and respondent.

TEIGEN, Justice.

This appeal is taken from an order denying a motion for a new trial and from the judgment. The action arose as a result of a two-car intersectional collision

in the city of New Rockford, in which the plaintiff, Klein, claims he was injured as a result of the negligence of the defendant, Harper. The action was tried to a jury. It returned a verdict in favor of Klein in the amount of $15,000. Harper moved for a new trial, which was denied.

At about noon on January 14, 1966, Klein was driving his wife's 1957 Ford northerly on Fifth Street South. At the same time Harper was driving his car, a 1949 Chevrolet, westerly on First Avenue South. A collision of the two cars occurred at the intersection where these two streets intersect at right angles. Klein claims the collision was caused by Harper's negligence and that as a result he, Klein, suffered permanent injury to and an aggravation of a pre-existing condition of his fourth lumbar vertebra.

At the time of the collision the weather was clear but the streets were icy, smooth and very slippery. Both cars were in good mechanical condition. The impact occurred in the northeast quadrant of the intersection. Both cars were traveling slowly at the time of impact. The front of Harper's car struck the right rear fender and bumper of the Klein car. The Klein car was damaged but the Harper car was not. There were no other eyewitnesses to the collision. Klein was about 31 years of age and Harper was about 76 years of age. Both lived in New Rockford, were acquainted with each other and had driven the streets before.

In his motion for new trial Harper specified errors at law occurring during the trial, the insufficiency of the evidence to justify the verdict, and excessive damages appearing to have been given under the influence of passion and prejudice.

The first four specifications of error deal with the question of admission of evidence.

The first claim to error specifies: "It is error for a chiropractor to base an opinion on reasonable medical certainty." The question was asked of a licensed chiropractor who had treated Klein in 1967 and 1968. He had testified that he had secured a case history, had taken and studied X-rays of Klein's lower spine, and had treated him 35 times. He testified to his findings and his opinion as to the cause of Klein's pain. He was then asked the following question:

"Q. Now, Doctor, based upon your training, education, and experience, and based upon your care and treatment of this particular patient, do you have an opinion based upon reasonable medical certainty as to whether or not this condition will recur permanently or not? Just yes or no.

"A. Yes.

"Q. Would you state that opinion, please.

"MR. HANSEN: Objected to as an improper question; this man is not a medical doctor.

"THE COURT: I will overrule the objection."

The chiropractor answered as follows:

"A. According to the case history as reported to me or given to me by Mr. Klein, where he stated he had previously no back condition prior to January 14, 1966, it is my opinion that Mr. Klein could be a recurrent patient and require periodic chiropractic care probably the remainder of his life."

Harper argues that the distinction between the practice of chiropractics and the practice of medicine is clearly recognized; that it would not have been error to have permitted him to testify with "chiropractic certainty" but that the trial court abused its discretion in allowing the chiropractor to testify as to "medical certainty." He argues that to permit a chiropractor to testify as to a medical fact gives

his testimony undue weight and tends to give the jury the impression that his testimony is to be equated with that of a medical doctor, and thus the jury was undoubtedly influenced to believe that the witness was a qualified medical practitioner.

In an action against a physician and surgeon charged with malpractice arising from the setting and treatment of a broken arm, this court held that there was no error in permitting a chiropractor to testify as to the taking of X-ray photographs and what these photographs showed. The court said:

"The fact that he was a chiropractic was a mere incident, except so far as it showed his knowledge and study of human anatomy. The names, number, and position of the bones in the human body are the same, whether one is a regular physician, a chiropractic, or a laic. It is not the school which he follows; but his knowledge, experience, and special training which qualifies the witness to testify as an expert in such cases. A chiropractor may testify as to matters in which he is qualified to speak so long as he is not attempting to testify in regard to a school of treatment separate and distinct from his. * * * The question of the qualification of the witness is primarily one for the trial court. * * * The weight given his testimony is for the jury." Ness v. Yeomans, 60 N.D. 368, 234 N.W. 75, 76 (1931).

The court held that there was no error in permitting the testimony of the chiropractor on such subjects in that case. Ness v. Yeomans, *supra*.

Section 43–06–01, N.D.C.C., states that the practice of chiropractic

"shall mean the practice of physiotherapy, electrotherapy, and hydrotherapy as taught by chiropractic schools and colleges, and the adjustment of any displaced tissue of any kind or nature, but shall not include prescribing for or administering to any person any medicine or drug to be taken internally which is now or hereafter included in materia medica, nor performing any surgery, except as is provided in this section, nor practicing obstetrics; * * *"

Section 43–06–16, N.D.C.C., authorizes every licensed chiropractor practicing in this state to sign death and birth certificates, and to sign certificates pertaining to public health; and chiropractors are required to report to the proper health officer in the manner required of licensed physicians. The statute then provides that all certificates signed by a chiropractor licensed in this state shall have the same force and effect as if signed by a licensed physician.

Section 43–06–17, N.D.C.C., provides that a licensed chiropractor may practice in any public or private hospital or other institution in this state upon request of the patient.

Section 43–17–01, N.D.C.C., defines a physician and the practice of medicine. However, Section 43–17–02(9), N.D.C.C., as amended in 1969, exempts chiropractors from the provisions of the chapter governing physicians and surgeons. It states:

"The provisions of this chapter shall not apply to the following:

* * * * * *

"9. Doctors of chiropractic duly licensed to practice in this state pursuant to the statutes regulating such profession;"

Chapter 23–17, N.D.C.C., provides for the establishment and licensing of chiropractic hospitals, sanitariums or related institutions for the hospitalization and care of the sick or injured by chiropractic methods.

A licensed chiropractor may use the title "doctor of chiropractic" or "D.C.". Section 43–06–11, N.D.C.C.

The practice of chiropractic is recognized in this state as one of the healing arts.

"A license to practice chiropractic is a limited license to 'practice medicine,' * * *"

70 C.J.S. Physicians and Surgeons § 15 b(1) (b).

"It is a general rule that a chiropractor is competent to testify as an expert or medical witness concerning matters within the scope of the profession and practice of chiropractic."

31 Am.Jur.2d Expert and Opinion Evidence, Section 107.

In Lowman v. Kuecker, 246 Iowa 1227, 71 N.W.2d 586, 52 A.L.R.2d 1380 (1955), the Supreme Court of Iowa held that it was not error to permit a chiropractor in a personal injury action to answer the following question: "Could you say with reasonable certainty the extent of future medical care that will be required in this case?" The objection was that the chiropractor was not qualified to testify as to "medical care." The court determined that the word "medical" pertains or relates to the science of medicine or to the practice or study of medicine and that "medicine" is the science and art of preserving health and preventing and curing diseases, and that the "practice of chiropractic" is the practice of medicine, although in a restricted form. See also the annotation, 52 A.L.R.2d 1384.

■ We find that the practice of chiropractic is the practice of medicine, although in a restricted form, and that the court did not err in overruling the objection.

■ Ancillary to Harper's claim that the chiropractor's testimony as to the permanency of the injury was inadmissible, he alleges that the court erroneously took judicial notice of the mortality tables and erred by instructing on Klein's life expectancy. In view of our determination that the trial court did not err when it overruled the objection to the testimony of the chiropractor, it was properly admitted and constitutes the necessary foundation for taking judicial notice of the mortality tables and the instruction on life expectancy and permanent injury.

■ Harper's second specification of error alleges that the court erred in admitting in evidence certain medical bills. The objection to the admission of these exhibits in evidence was made on the ground of lack of foundation. Two of the exhibits were doctor bills, one exhibit consisted of two hospital bills, and the fourth exhibit consisted of fourteen receipts for the purchase of drugs. It is Harper's contention that there is no evidence to show that the treatment indicated was necessitated by the collision, that the charges were fair and reasonable, and that there is no showing of what treatment was given or for what condition. The exhibits in question were identified by the plaintiff Klein. He testified that he suffered injury to his lower back and to his stomach resulting from the collision. He testified that, at the time of the collision, the steering wheel of his automobile pushed up against his stomach and, as a result, it was bruised or ulcerated. Following the accident he went to a chiropractor. When he did not obtain relief from his pain, he testified that he went to Aberdeen, South Dakota, where he consulted with doctors and was placed in a hospital for about four days. About ten days later he returned to the hospital for more treatment and remained there for about five days. The medical bills received in the form of exhibits were the charges of the doctors and the hospital at Aberdeen. He testified that the stomach bleeding was stopped as a result of the treatments received but that the pain in his lower back returned in about two months. He did not return to this medical facility; instead he went to several chiropractors and was finally referred to a neurosurgeon, who in turn referred him to an orthopedic specialist. The orthopedic specialist prescribed a chair brace. Klein later discarded the chair brace and went back to a chiropractor for treatments. The testimony of Klein clearly connects the requirement for the medical services with the alleged tortious conduct of Harper as a proximate cause. Thus there is evidence that the medical services

were rendered because of the injury of which he complains and that the services were necessary; however, there is no evidence as to the reasonable value of the services rendered. Klein was merely asked what bills he incurred on account of services rendered by his doctors, for the hospital, and for drugs. No testimony was introduced from the doctors or hospital management as to the necessity for the services rendered or the reasonableness of the charges made. The four exhibits objected to totaled $332.05. In addition, there were other medical bills admitted without objection—some which occurred before and some after those in question—which total $590.09, for a total claim of medical expenses of $922.14. We find that there is evidence of causal connection and necessity but no evidence as to reasonable value of the services except the actual amount of the charges. We agree that the proper measure of damages is not the actual expenses or liability incurred but the reasonable value of the medical services made necessary because of the injuries which resulted from the defendant's fault. The trial court correctly instructed the jury that if they find for the plaintiff the allowance for medical expenses shall not exceed "the reasonable value, not exceeding the actual cost to the plaintiff, * * *" The amount paid or the liability incurred is, however, evidence which can go to the jury to assist it in determining the reasonable value of these services. Therefore, we find that these medical bills were admissible in evidence.

"The amount paid or liability incurred is, however, evidence which can go to the jury to assist it in determining reasonable value." 22 Am.Jur.2d Damages, Section 102, at 151.

Guerra v. Balestrieri, 127 Cal.App.2d 511, 274 P.2d 443 (1954); Townsend v. Keith, 34 Cal.App. 564, 168 P. 402 (1917). The reasonableness of the expenses was not disputed. The objection went only to the foundation for admissibility in evidence. We find that there was sufficient founda-

tion to admit them in evidence. We find no error here.

In his third specification of error Harper alleges that the trial court erred in not permitting his counsel to ask the plaintiff Klein whether he had stated to the defendant Harper at the scene of the accident that he would not make a claim against him. Counsel for Harper asked Klein, on cross-examination, if he had not said to Harper at the scene of the collision that he "wouldn't make a claim" against Harper. An objection to the question was sustained and Harper made an offer of proof which was rejected by the court. The offer of proof made was that Klein, in a discovery deposition, had testified as follows:

" 'Q. Didn't you tell him you didn't want to make any claim against him as a result of this accident?

" 'A. It is possible.

" 'Q. Do you recall telling him that?

" 'A. Something to that effect.

" 'Q. You don't remember exactly the language you used?

" 'A. No.

" 'Q. What did he tell you?

" 'A. He wouldn't make a claim against me.' "

Harper's counsel argued that if the plaintiff were permitted to answer his answer would constitute an admission against interest "going to the matter of who was at fault or who is responsible, and, therefore, this is admissible." We disagree. We believe that the statement attributed to Klien in the deposition merely expressed a state of mind immediately following the collision. According to the evidence, Klein, at that time, didn't believe that he was seriously injured. He stayed at the accident scene and talked with Harper; he walked to one of the neighborhood houses and called the police to advise them of the collision; he returned and stayed at the scene until the chief of police arrived and conducted his

investigation; and he then drove his automobile away. We find no evidence that he made any complaint of injury at that time. The statement attributed to him was made in the presence of the chief of police. We do not know, from this record, whether the statement had reference to making of a traffic charge or the instituting of a civil suit. We find it was not a proper question and the objection was properly sustained.

■ The declaration of a party, to be admissible against him, must tend to prove some fact in issue. An admission or declaration is not admissible in evidence unless it is relevant to the issue or issues in the case.

"The fundamental rule that evidence is not admissible unless it is relevant to the issue or issues in the case applies to admissions and declarations to the same extent that it does to other kinds of evidence. If otherwise competent, admissions and declarations are admissible where, and only where, they tend to prove a principal or ultimate fact in issue, and are directed to the establishment of pertinent evidentiary facts." 29 Am.Jur.2d Evidence, Section 601.

"In order that a statement offered as an admission may be received it must, at the time when it is offered, be relevant to, and have a material bearing on, the issues in the case; * * *" 31A C.J.S. Evidence § 276.

"A statement is not competent as an admission where it does not, under a reasonable construction, appear to admit or acknowledge the fact which is sought to be proved by it." 31A C.J.S. Evidence § 277.

The statement attributed to Klein in the offer of proof does not measure up to the requirements for admission in evidence. There is no error here.

Next, Harper specifies that the court erred in failing to receive in evidence defendant's Exhibit "B". This exhibit consists of a diagram of the accident scene prepared during the taking of a discovery deposition of Klein and upon which he had circled an area within the intersection in which he had testified he saw dust upon the surface of the icy street following the collision. The exhibit was marked Exhibit "1" at the time the discovery deposition was taken and was made a part of the deposition. Harper sought to introduce this exhibit at the trial while cross-examining Klein. The offer was objected to and sustained by the trial court. Thereafter, in further cross-examination of Klein and at the request of counsel for Harper, Klein encircled upon plaintiff's Exhibit "1" the area in the intersection wherein he recalled seeing dust upon the icy surface of the street. We have examined defendant's Exhibit "B" and plaintiff's Exhibit "1" and find that the circle placed upon each exhibit by Klein is in the same location and of the same relative size. Thus the evidence which Harper sought to produce by the introduction of defendant's Exhibit "B" was obtained by further cross-examination of Klein and by having him draw upon plaintiff's Exhibit "1" a circle indicating the area where he saw dust or dirt upon the surface of the icy street following the collision. Counsel for Klein objected to the receipt in evidence of defendant's Exhibit "B" on the grounds that no foundation had been laid and that it was a conclusion of law. Later, in chambers, when the question was being argued out of the presence of the jury, he added the further objection that a discovery deposition is not admissible in any form for any purpose except impeachment; that it was being offered as substantive proof and regardless of its materiality or its foundation or the fact that it represented only a conclusion, it was inadmissible for any purpose other than impeachment. Counsel for Harper cites Rule 26(d) (2), N.D.R.Civ.P., which provides:

"The deposition of a party * * * may be used by an adverse party for any purpose."

■ We conclude that defendant's Exhibit "B" was admissible under the rules

of evidence as required by Rule 26(d), N.D.R.Civ.P., and that under subsection 2 thereof it could be used by the adverse party for any purpose. The area in the intersection upon which Klein saw dust or dirt following the collision was relevant to the issues on the question of the point of impact within the intersection, and being admissible under the rules of evidence it could be used for any purpose, either as substantive evidence or for impeachment. It could be used for any purpose at the trial even though Klein was present and testifying. 4 Moore's Federal Practice, Chapter 32.04; 2A Federal Practice and Procedure (Barron & Holtzoff), Section 654 at 162. We find, however, that the error is not prejudicial in this case for the reason that Klein identified the identical area on the plaintiff's Exhibit "1" as was shown on defendant's Exhibit "B" and, therefore, plaintiff's Exhibit "1" served the same purpose as defendant's Exhibit "B" would have served had it been admitted in evidence. Thus the error became nonprejudicial and is not inconsistent with substantial justice. Therefore, it does not constitute a ground for new trial. Rule 61, N.D.R.Civ.P.; Bartholomay v. St. Thomas Lumber Company, 148 N.W.2d 278 (N.D.1966).

Harper has also specified that the trial court erred in denying a motion for mistrial based upon two statements made by counsel for Klein in his opening arguments to the jury following the close of the testimony. The two statements are as follows:

"Now you will find out I have tried many lawsuits against Mr. Hansen, a very capable, a very fine lawyer; he goes all over the State defending these cases * * *."

The argument is made that this statement makes indirect reference to the fact that insurance was involved in the litigation.

The second statement from which the motion was premised is as follows:

"What is it worth? The Court will instruct you as a matter of law that at age 33, which Mr. Klein is, that he has

a legal life expectancy of 35 years. That has to be taken, of course, with a certain grain of salt. *Mr. Wells* and I have beat that, but averagingly speaking, at 33 he has an average recorded table expectancy of 35 years." [Emphasis added.]

In support of the motion for a mistrial it is pointed out that Mr. Wells, to whom counsel referred, was a member of the jury. It is pointed out that counsel for Klein admitted at the time he made this statement he was looking directly at Mr. Wells.

Harper also specified as a ground for new trial a statement made in rebuttal, as follows:

" * * * I am not in the habit of standing in a courtroom and calling somebody a liar like Mr. Hansen does * * *"

Hansen was counsel for Harper. This statement was made in the rebuttal argument and could not be incorporated in the motion for mistrial as it occurred after the motion was made. The court denied the motion for new trial. Inasmuch as all three statements come within the realm of claimed misconduct of counsel, we will consider them together.

In denying the motion for mistrial and the motion for a new trial upon the grounds set forth, the trial judge found that the three remarks of counsel in his argument to the jury were not disturbing to him; that he did not feel that the first remark would necessarily be followed by the conclusion that insurance was involved; that although the trial court felt that it was improper to call a juror by name, the trial judge was acquainted with the jurors and did not feel that the juror to whom the remark was addressed was a key person on that particular jury; and that although the judge stated that he was quite sensitive to language calling someone a liar, in this particular instance it did not strike him as being particularly strong and he did

not believe that it affected the jury. The trial court, on reconsideration on the motion for new trial, reaffirmed its decision made at the trial denying the motion for a mistrial and, in turn, denied a new trial.

The trial court, in its instructions to the jury which followed the arguments, gave the usual cautionary instruction that the arguments and other remarks of the attorneys were not to be considered as evidence in the case and that any comments or statements made by them, not warranted by the evidence, should be wholly disregarded by the jurors in their deliberations.

■ In the denial of a mistrial, the court has a wide discretion.

"The granting of a mistrial is an extreme remedy * * * All the authorities agree that the practice should be resorted to only 'when further proceedings therewith would be productive of great hardship or manifest injustice.'" Hoffer v. Burd, 78 N.D. 278, 49 N.W.2d 282, 292 (1951).

. See also: Holten v. Amsden, 161 N. W.2d 478 (N.D.1968); Thornburg v. Perleberg, 158 N.W.2d 188 (N.D.1968); Haugen v. Mid-State Aviation, Inc., 144 N.W. 2d 692 (N.D.1966); Larson v. Meyer, 135 N.W.2d 145 (N.D.1965); Quam v. Wengert, 86 N.W.2d 741 (N.D.1957).

Following the close of the opening argument, counsel for Harper advised the court that he wished to make a motion in chambers. The jurors were admonished to remain in their places and the court and counsel entered the court chambers where the motion for mistrial was made. The motion was denied in chambers, whereupon the court and counsel returned to the courtroom and counsel for Harper made his final argument to the jury. This was followed by the rebuttal argument by counsel for Klein. Counsel for Harper did not ask to have the jury admonished nor did he request any cautionary instructions as to the points raised in his motion for mistrial.

■ We have held that where misconduct on the part of an attorney in his argument to the jury is alleged as a ground for mistrial the movant should not only object to the statement but request the court to take action by cautionary instructions to the jury, or some suitable action. Quam v. Wengert, *supra*; State v. Knudson, 21 N.D. 562, 132 N.W. 149 (1911). We find that the court committed no error in denying the motion.

The third statement quoted above that " * * * I am not in the habit of standing in a courtroom and calling somebody a liar like Mr. Hansen does * * *" was made in the rebuttal argument. The argument was taken down by a court reporter but no objection was made and no ruling was made by the trial court. However, it was specified as misconduct in the motion for new trial.

■ The fact that the argument was taken down by the court reporter does not bring the propriety of the argument to this court for review without objection and ruling having been made at the trial. Schultz v. Winston & Newell Co., 68 N.D. 674, 283 N.W. 69 (1938); State v. Kirsch, 66 N.D. 626, 268 N.W. 473 (1936). See also, Gleson v. Thompson, 154 N.W.2d 780 (N.D.1967). Neither does specifying the argument as one of the grounds for a new trial present the matter for review on appeal without timely objection having first been made in the trial of the case and a ruling made thereon by the court. Schultz v. Winston & Newell Co., *supra*.

This disposes of assignments of error numbered 5 and 6.

■ As a seventh specification of error Harper alleges that the jury's verdict in the amount of $15,000 is grossly excessive in view of the evidence of damages and appears to have been given under the

influence of passion and prejudice. In his argument Harper recognizes the general rule that a motion for a new trial upon this ground is addressed to the sound judicial discretion of the trial court and its decision will not be disturbed unless abuse of that discretion is clearly shown. This is the rule. We have so held in many cases. See list of cases in Gravseth v. Farmers Union Oil Company of Minot, 108 N.W.2d 785 (N.D.1961). Klein was 33 years of age at the time of the trial. Medical testimony establishes that he had a congenital abnormality in the region of the fourth lumbar vertebra which was aggravated by an injury consisting of an insult or minor trauma, or a series of insults or a severe trauma, to the area and which has caused the spinal curvature to become broken down. That as a result the ligaments in the area are strained and stretched and as there is very little blood supply, if any, to a ligament, there is going to be very little regeneration to it and, consequently, it will require periodic care which, according to the testimony, could cause Klein to be a recurrent patient and require periodic chiropractic care, probably for the remainder of his life. Surgery was not recommended. He wears a canvas belt at all times. Klein testified that he is in a great deal of pain at times but gets relief from chiropractic treatments. The chiropractor who had treated him 35 times testified that he was not expecting to cure him but that he was alleviating the condition as he finds it. The court instructed the jury that, according to the mortality tables, Klein had a life expectancy of 35 years. The trial court denied the motion for new trial on this ground. The review in this court is limited to a determination of the question of whether the trial court abused its discretion, resulting in injustice.

"A motion for new trial on the ground that damages appear to have been given under influence of passion and prejudice is addressed to the sound judicial discretion of the trial court and the appellate court will not reverse the trial court's order on that ground, unless an abuse of discretion is clearly shown." Teegarden v. Dahl, 138 N.W.2d 668 (N.D.1965).

See also: Reid v. Ehr, 36 N.D. 552, 162 N.W. 903 (1917); Gravseth v. Farmers Union Oil Company, *supra*; Kern v. Art Schimkat Construction Co., 125 N.W.2d 149 (N.D.1963).

We have carefully reviewed the evidence and, under the circumstances, cannot say that, as a matter of law, the verdict is excessive, or that it was given under the influence of passion and prejudice, or that the court abused its discretion in denying the motion for a new trial on this ground.

▇▇▇ Lastly, Harper has specified that the court erred when it denied his motion for a directed verdict or for a dismissal of the plaintiff's complaint. At the close of the whole case, counsel for Harper moved for a directed verdict or, in the alternative, for a dismissal of the plaintiff's complaint. These motions were resisted and, in accordance with the provisions of Rule 50(a), N.D.R.Civ.P., were denied by the trial court. No motion was made for a judgment notwithstanding the verdict. The case is here on appeal from the judgment and this court may review the ruling on the motion for a directed verdict. Section 28–27–29.1, N.D.C.C.; Glatt v. Feist, 156 N.W.2d 819 (N.D.1968).

The motion for directed verdict or, in the alternative, for a dismissal of the plaintiff's complaint was based on the argument that the evidence establishes, as a matter of law, that Klein was contributorily negligent, which negligence proximately contributed to his injuries.

▇▇▇ Questions of negligence, contributory negligence, and proximate cause of an injury are primarily questions of fact for the jury unless the evidence is such that only one conclusion can reasonably be deduced therefrom. Glatt v. Feist, *supra*. It is only when the facts and circumstances are such that reasonable men can draw

but one conclusion from the evidence that the question of negligence and contributory negligence becomes a question of law for the court. In determining this issue the court must adopt that view of the evidence which is most favorable to the verdict. Glatt v. Feist, *supra*; Schnoor v. Meinecke, 77 N.D. 96, 40 N.W.2d 803 (1950).

We have examined the record in this case and in reviewing the evidence in the light most favorable to the verdict do not find it presents a state of facts from which reasonable men can draw but one conclusion and, therefore, find that it was proper for the trial court to have denied the defendant's motion for a directed verdict or a dismissal of the plaintiff's complaint.

The judgment and the order denying the motion for new trial are affirmed.

STRUTZ, C. J., and ERICKSTAD and KNUDSON, JJ., concur.

PAULSON, J., deeming himself disqualified did not participate; EUGENE E. COYNE, District Judge of the Fifth Judicial District, sitting in his stead. Judge COYNE is now deceased.