Filed 12/4/25  Gundersen v. Betenbaugh CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Glenn)

----

|  |  |
|---|---|
| DALAS L. GUNDERSEN, | C095468 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 15CV01484) |
| PAUL BETENBAUGH, | |
| Defendant and Appellant. | |

Dalas Gundersen had worked as a financial advisor for Edward D. Jones & Co., LP (Edward Jones) in Willows, California, but after his employment was terminated in December 2014 and advisors Paul Betenbaugh and Lisa Rodriguez took over his book of business, Gundersen opened a competing financial services office.  When Gundersen's former client complained about Rodriguez, Betenbaugh and Rodriguez believed Gundersen had been involved in preparing the complaint.  Betenbaugh was angry and posted ads on Craigslist with Gundersen's cell phone number, soliciting sex.

1

Gundersen began receiving texts, calls and lewd photographs on his cell phone in response to the ads.

Gundersen sued Betenbaugh, Rodriguez, and Edward Jones for internet impersonation, interference with prospective economic relations, unfair business practice, false light, defamation, and intentional infliction of emotional distress. Among other things, and as relevant to this appeal, the jury found in favor of Gundersen and against Betenbaugh, and awarded Gundersen $3 million for past noneconomic damages and $5 million for future noneconomic damages.

Betenbaugh now contends (1) there is insufficient evidence that Gundersen would suffer future noneconomic damages that were reasonably certain to occur, and (2) the $5 million award for the future noneconomic damages was excessive. Finding no merit in those claims, we will affirm the judgment.[1]

BACKGROUND

Gundersen started working as a financial advisor for Edward Jones in Willows, California in 1999. His employment was terminated in December 2014.

Betenbaugh worked as a financial advisor for Edward Jones in Orland, California, and Rodriguez worked as a financial advisor for Edward Jones in Corning. Following

---

[1] Gundersen asked this court to take judicial notice of two newspaper articles and the following assertions stated therein: that the Sacramento Valley Mirror is a twice-weekly newspaper in Glenn County, that it had a print circulation of 2,500, and that it had no online presence other than Facebook. The truth of the contents of newspaper articles are not judicially noticeable. (*State ex rel. Edelweiss Fund, LLC v. JPMorgan Chase & Co.* (2023) 90 Cal.App.5th 1119, 1133, fn. 7; *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1389, fn. 13.) Moreover, Gundersen acknowledges that the articles were not presented in the trial court. Absent exceptional circumstances, a reviewing court generally does not take notice of evidence that was not presented to the trial court, and Gundersen has not shown such circumstances exist. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3, overruled on other grounds involving jurisdiction as noted in *Halyard Health Inc. v. Kimberly-Clark Corp.* (2019) 43 Cal.App.5th 1062, 1074.) The request for judicial notice is denied.

Gundersen's termination, Betenbaugh and Rodriguez took over Gundersen's book of business.

Gundersen opened a competing financial services office in Willows in May 2015. It was undisputed that a financial advisor must have a good reputation to be successful, and that reputation and integrity were especially important for success as a financial advisor in a small town.

In August 2015, one of Gundersen's former clients made a complaint against Rodriguez. Rodriguez and Betenbaugh believed Gundersen drafted or helped draft the complaint against Rodriguez.

Betenbaugh posted ads on Craigslist using Gundersen's cell phone number because he was angry about the complaint. Betenbaugh posted two ads using an e-mail account he created that contained Gundersen's initials. One ad titled "Mature professional – m4m" was posted on September 19, 2015, and contained a photograph of a man performing oral sex. The ad was for "a potential romantic connection" and said the person posting the ad was attracted to someone younger and preferred "a well trimmed boy/man." The ad ended with Gundersen's cell phone number. Another ad, posted on September 24, 2015, was titled "Ride with me -m4m," solicited sex in explicit terms, and contained Gundersen's cell phone number. A third ad, using a different e-mail address, was posted October 1, 2015, was titled "Long and Hard – m4m," contained a photograph of an erect penis, and stated the person posting the ad was "looking to meet a nice caring man." The third ad also contained Gundersen's cell phone number.

Gundersen received texts, calls, and lewd photographs on his cell phone regarding sex starting in September 2015. He received hundreds of texts. After hiring an attorney, Gundersen discovered that Betenbaugh posted the Craigslist ads.

Gundersen sued Betenbaugh, Rodriguez, and Edward Jones for internet impersonation, interference with prospective economic relations, unfair business practice, false light, defamation, and intentional infliction of emotional distress. His complaint

3

was based on the Craigslist posts by Betenbaugh, and Rodriguez's alleged disparaging remarks about Gundersen to Edward Jones clients.

Gundersen testified at the trial. He said that prior to his termination, he was a happily married man, made millions of dollars at Edward Jones, and felt very good about himself. But after the Craigslist ad incident, he could not sleep through the night, had panic attacks, and functioned at only 50 to 60 percent daily. He said the texts and calls he received from the Craigslist ads shocked, degraded, humiliated, disturbed, and terrorized him, and they destroyed his business and personal life. Gundersen broke down and became emotional at the trial. He testified that he struggled to come back from a depth of loss and despair, was still making a comeback and struggling to improve his life, and was not his former calm self. He testified that his reputation was tarnished and he was still struggling to have a good reputation.

The trial court instructed the jury on the award of damages. It admonished that if the jury found Gundersen had proved his claim against Betenbaugh, the jury must decide how much money would reasonably compensate Gundersen for the harm, and the jury should not speculate or guess in awarding damages. The trial court told the jury Gundersen could recover for mental suffering, anxiety, humiliation, and emotional distress; loss to reputation and standing in the community; loss of dignity and honor; and shame. With regard to future emotional distress, the trial court instructed that Gundersen must prove he was reasonably certain to suffer such harm, no fixed standard existed for deciding the amount of those damages, and the jury must decide a reasonable amount based on the evidence and common sense. The trial court also instructed that argument by counsel was not evidence of damages and the jury's award must be based on the jury's reasoned judgment applied to the testimony of witnesses and other evidence admitted at trial.

The jury found in Gundersen's favor on his claims against Betenbaugh, and that Gundersen suffered damage as a result of Betenbaugh's conduct.

4

It awarded Gundersen $3 million as reasonable damages for past noneconomic loss and $5 million for future noneconomic loss. It further found that Betenbaugh acted with malice, oppression or fraud. Betenbaugh stipulated to a $35,000 punitive damages award.

The jury also found against Rodriguez and Edward Jones and awarded Gundersen $8 million for past noneconomic loss and $22 million for future noneconomic loss against those defendants. It found that Rodriguez acted with malice, oppression or fraud. A judgment was entered for $937,500 against Rodriguez and $30 million against Rodriguez and Edward Jones.

Rodriguez and Edward Jones moved for a new trial. The trial court found that the verdicts against Rodriguez and Edward Jones far exceeded awards in other California defamation and intentional infliction of emotional distress cases, and that the $30 million noneconomic damages award against Rodriguez and Edward Jones was excessive. It granted them a new trial unless Gundersen agreed to a reduction to $10 million. Gundersen accepted the reduction.

Betenbaugh moved for a new trial and for judgment notwithstanding the verdict. He asserted there was no evidence to support the award of past and future noneconomic damages, the awards were excessive, and the awards were the product of the jury's passion and prejudice and improper argument by counsel. The trial court denied the motions, rejecting the claim of insufficient evidence. The trial court ruled the posting of the Craigslist ads was offensive and insulting to Gundersen, Betenbaugh's conduct was inflammatory, and the jury was offended by the conduct. It further concluded the award against Betenbaugh was not excessive.

Additional background is set forth in the discussion as relevant to the contentions on appeal.

5

## DISCUSSION

## I

Betenbaugh contends there is insufficient evidence that Gundersen would suffer future noneconomic damages that were reasonably certain to occur.

A damages award may include reasonable damages for the pain and suffering a plaintiff is reasonably certain to suffer in the future. (See Civ. Code, §§ 3283, 3359; *Pouchan v. Godeau* (1914) 167 Cal. 692, 696-697; *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 533; *Guerra v. Balestrieri* (1954) 127 Cal.App.2d 511, 519; see generally *Licudine v. Cedars-Sinai Medical Center* (2016) 3 Cal.App.5th 881, 895.) An award of future noneconomic damages must not be speculative and must be based upon some reasonable ground. (See *Bellman v. San Francisco High School Dist.* (1938) 11 Cal.2d 576, 588; *Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 350; *Triton Ins. Underwriters, Inc. v. National Chiropractic Ins. Co.* (1965) 232 Cal.App.2d 829, 835; *Loth v. Truck-A-Way Corp.* (1998) 60 Cal.App.4th 757, 764-766; *Sommer v. Gabor* (1995) 40 Cal.App.4th 1455, 1472-1473.) A claim for future damages can be supported by testimony that the plaintiff was still suffering from nervousness and pain at the time of trial. (*Yaffee v. Skeen* (2024) 106 Cal.App.5th 1281, 1321 (*Yaffee*); *Loper v. Morrison* (1944) 23 Cal.2d 600, 611.) Expert testimony is not required. (*Yaffee*, at p. 1321.)

In his appellant's opening brief, Betenbaugh argued, among other things, that Gundersen's counsel introduced homophobic undertones during closing argument, and that the trial court seemed to incorporate some of the same themes in denying the motion for new trial. But we have independently reviewed the record to determine whether substantial, properly admissible evidence supports the award of future noneconomic damages, and we conclude that it does. We do not adopt or condone any statement in the record that might reasonably be perceived as bias or prejudice, and Betenbaugh has not established that the jury's verdict was the product of improper bias.

Gundersen testified that the lewd images, phone calls, and hundreds of texts he received in response to the Craigslist ad damaged his personal life. When he found out Betenbaugh was responsible for the ads, Gundersen became afraid. He had panic attacks and could not sleep through the night. Gundersen testified that he fought to return from loss and despair and had made progress, but he was not yet his former self and was still struggling to recover. In his closing argument to the jury, defense counsel acknowledged that Gundersen broke down and became emotional at the trial. The jury could observe and assess Gundersen's demeanor.

Gundersen also testified about receiving treatment from different counselors. He was cross-examined about a January 2016 e-mail he wrote his therapist chronicling his despair, shock, diminished cognitive function, panic attacks, lack of control, loss of restful and sustained sleep, chronic fatigue, thoughts of "ultimate peace," and lack of purpose, value, self-confidence, and family engagement. An e-mail to the same therapist in February 2016 that is part of the same trial exhibit, and that also chronicled Gundersen's sleep and other problems, mentioned Gundersen's feeling that Betenbaugh had harassed him.

The foregoing evidence allows us to independently conclude that substantial evidence supports the jury's award of future noneconomic damages. Betenbaugh's claim of insufficient evidence lacks merit.

II

Betenbaugh also argues that the $5 million award for the future noneconomic damages was excessive.

There are no fixed standards for computing the amount of damages. (*Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 508 (*Seffert*); *Behrendt v. Times-Mirror Co.* (1938) 30 Cal.App.2d 77, 90, disapproved on another point in *Fuentes v. Tucker* (1947) 31 Cal.2d 1, 7.) In particular, the amount of damages for pain and suffering is " 'a matter on which there legitimately may be a wide difference of opinion.' " (*Seffert*, at p. 508.)

7

Such a determination is a factual question committed to the discretion of the jury, which sees and hears the witnesses and frequently sees the plaintiff's injuries. (*Id.* at pp. 507-508; *Johnson v. Monsanto Co.* (2020) 52 Cal.App.5th 434, 449 (*Johnson*); *Yafee, supra*, 106 Cal.App.5th at p. 1321.) We review the jury's award for substantial evidence, giving great weight to the jury's determination. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 64 (*Bertero*); *Seffert,* at p. 506; *Johnson*, at p. 449; *J.P. v. Carlsbad Unified School Dist.* (2014) 232 Cal.App.4th 323, 342-343; *Yafee*, at p. 1321.) We determine every conflict in the evidence in the respondent's favor, give the respondent the benefit of every inference reasonably to be drawn from the record, and will uphold the jury determination whenever possible. (*Seffert*, at p. 508.) We will not set aside the jury's verdict except where the award is so large it shocks the conscience and suggests passion, prejudice or corruption in the jury. (*Seffert*, at p. 507; *Johnson*, at p. 449; *Yafee*, at p. 1321.)

The trial court instructed the jury that the amount of damages for future emotional distress must be based on proof that Gundersen was reasonably certain to suffer that harm, and the jury must use its judgment to decide a reasonable amount based on the evidence and common sense. It admonished that damages cannot be based on speculation. We presume the jury followed those instructions. (*Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 200 (*Soto*).) The $8 million noneconomic damages the jury awarded was substantially less than the $13 to $26 million Gundersen's counsel requested in closing argument, indicating that the jury exercised its discretion to determine that $8 million was a reasonable amount to compensate Gundersen for noneconomic damages. (*Phipps v. Copeland Corp. LLC* (2021) 64 Cal.App.5th 319, 343-344 (*Phipps*) [considering the significantly-lower-than-requested damages award in assessing a claim that an award was the result of the jury's passion and prejudice]; *Johnson, supra*, 52 Cal.App.5th at pp. 450-451 [same].)

8

Betenbaugh does not challenge the propriety of the $3 million award for past noneconomic damages. And he has not established that the challenged $5 million award for future noneconomic damages was the result of improper jury passion or prejudice.

*Buell-Wilson v. Ford Motor Co.* (2006) 141 Cal.App.4th 525 (*Buell-Wilson*), disapproved on another ground in *Kim v. Toyota Motor Corp.* (2018) 6 Cal.5th 21, 38, fn. 6, does not support Betenbaugh's claim that the reduction of the damages award against Rodriguez and Edward Jones also required a reduction of the award against Betenbaugh. (*Buell-Wilson,* at pp. 552-555.) Moreover, *Briley v. City of West Covina* (2021) 66 Cal.App.5th 119 (*Briley*), a case Betenbaugh contends requires a retrial or remittitur, is factually distinguishable. The plaintiff in *Briley* offered little detail about his emotional distress claim, there was no evidence that any of the problems he described was particularly severe, and many of those problems had substantially resolved or significantly diminished at the time of trial. (*Id.* at pp. 141-142.) The problems Gundersen testified about were far more serious in comparison, including chronic fatigue, despair, and panic attacks. Gundersen's testimony indicated his problems persisted at the time of the trial.

Damage awards in published opinions referenced by Betenbaugh do not require a different result. "The vast variety of and disparity between awards in other cases demonstrate that injuries can seldom be measured on the same scale. The measure of damages suffered is a factual question and as such is a subject particularly within the province of the trier of fact. For a reviewing court to upset a jury's factual determination on the basis of what other juries awarded to other plaintiffs for other injuries in other cases based upon different evidence would constitute a serious invasion into the realm of factfinding. [Citations.] Thus, we adhere to the previously announced and historically honored standard of reversing as excessive only those judgments which the entire record, when viewed most favorably to the judgment, indicates were rendered as the result of passion and prejudice on the part of the jurors." (*Bertero, supra*, 13 Cal.3d at p. 65,

9

fn. 12; see *Leming v. Oilfields Trucking Co.* (1955) 44 Cal.2d 343, 356; *Phipps, supra*, 64 Cal.App.5th at pp. 344-345; *Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 615-616; contra, *Seffert, supra*, 56 Cal.2d at p. 508; *Briley, supra*, 66 Cal.App.5th at p. 141.) As for summaries and other matter relating to verdicts in other cases, those do not provide information sufficient to furnish a useful comparison and do not, therefore, support a claim of excessive damages. (See *Soto, supra*, 239 Cal.App.4th at p. 201.)

Betenbaugh further urges that Gundersen's trial counsel made improper comments or arguments during voir dire and closing argument. The claim is forfeited because Betenbaugh did not object to the challenged remarks when they were made nor ask the trial judge to give a curative admonition. (*Sabella v. Southern Pac. Co.* (1969) 70 Cal.2d 311, 318-320; *Seffert, supra*, 56 Cal.2d at p. 509; *Soto, supra*, 239 Cal.App.4th at p. 200; *Ortega v. Pajaro Valley Unified School Dist.* (1998) 64 Cal.App.4th 1023, 1061.)

Finally, Betenbaugh contends the noneconomic damages verdict was the product of prejudice due to media coverage and because the trial was conducted at the Glenn County fairgrounds during the COVID-19 pandemic. But the trial court instructed the jury not to allow anything that happened outside the courtroom to affect its decision. It admonished that during the trial, the jury may not read, listen to or watch any news reports about the case, including anything on the internet. It warned that jurors who violated those prohibitions may be subject to jail time, a fine or other punishment. It also instructed that the verdict may not be influenced by bias, sympathy, prejudice or public opinion, and that the jury must decide the facts solely from the evidence presented during trial. The trial court subsequently repeated its admonitions about not allowing anything that happened outside the courtroom to affect the jury's decision, not using any electronic device or media to send or receive information about the case, and not reading any reports about the case in the news or internet.

Betenbaugh does not point to anything in the record that shows the jury did not heed the trial court's instructions or that it was influenced by media coverage or a trial at the county fairgrounds.

## DISPOSITION

The judgment is affirmed.

_____/S/_____
MAURO, Acting P. J.

We concur:

_____/S/_____
BOULWARE EURIE, J.

_____/S/_____
FEINBERG, J.

11